# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICHAEL J. BEVERIDGE,<br><br>                                  Plaintiff,<br>     vs.<br>UNITED STATES OF AMERICA, et al.,<br><br>                                  Defendants. | CASE NO. 15cv2209-LAB (JMA)<br><br>**ORDER GRANTING MOTION TO DISMISS** |

Michael Beveridge sued four Naval Sea Systems Command colleagues for spreading lies about him. Here's a sample: Beveridge said his supervisor told co-workers that Beveridge "attended [a] training but arrived late," moved "his personal computer from his workplace," and accused him of "pushing furniture around." (Dkt. 10 at 5–7.) Beveridge calls these actions "trivial in nature." (*Id.* at 14–15.) The Court agrees. Beveridge's complaint is borderline frivolous: he claims his colleagues made false accusations to "destroy" his career and "to accomplish the mission of the Defendant United States of America." (*Id.* at 10.) The Court need not reach the merits here because the Civil Service Reform Act provides the exclusive route for remedy (if any). The Court lacks subject matter jurisdiction. Beveridge's claims are dismissed without leave to amend.

/ / /

/ / /

## I. Background

Michael Beveridge was a mechanical engineer for the Department of the Navy for over 30 years. His "employment environment drastically changed" after Rebecca Kubera became his supervisor in late 2011. He blames Kubera for spreading lies about him on about five occasions over the course of two years. For example, Kubera told a human resources employee that Beveridge "yelled at her," attended two training sessions late, and failed to provide an "update" on a project. (Dkt. 10 at 5.) Kubera told others that Beveridge moved a "computer from the room in violation of her directive," called a colleague "a 'deaf dumb' person," accused Beveridge of "unauthorized obligation of funds associated with a RAM gearbox repair," and told others he engaged in disrespectful behavior like "pushing furniture around" (*Id.* at 6–7.) Beveridge says federal employees James Crouch, Darren Speer, and Ralph Price each sent Kubera an email this February complaining that Beveridge yelled at one of them for taking his work, called another an "idiot," and cursed at the third while passing him in the hall. (*Id.* 7–9.)

Beveridge believes these actions "were [taken] in retaliation for his efforts to report actions of waste fraud and abuse occurring in the workplace concerning certain Co-Employees, including the individual Defendants, by filing specific grievances with his union." (*Id.* at 5.) These lies resulted in two disciplinary letters, "destroyed [his] career," and forced him "to retire from federal service." (*Id.* at 10.) He also blames Defendants for his depression, anxiety, and wants more than $100,000 in damages.

The Navy's Tort Claim Unit denied Beveridge's claim last September. A month later, Beveridge filed his original complaint. The Court granted Defendants' first motion to dismiss in May. Beveridge filed an amended complaint. He asserts causes of action under the FTCA, 42 U.S.C. § 1983, and *Bivens*; state law claims for libel, slander, fraudulent misrepresentation, retaliation, and intentional infliction of emotional distress; and asks for declaratory relief that the Defendants weren't acting within the scope of employment. Defendants moved to dismiss for lack of subject matter jurisdiction, or in the alternative, for failure to state a claim.

## II. Legal Standard

The Court must dismiss a complaint for lack of subject matter jurisdiction. Fed. R. Civ. P. 12(b)(1). When the defendant "asserts that the allegations contained in a complaint are insufficient on their face to invoke federal jurisdiction" the Court accepts the plaintiff's allegations as true. *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004). But the allegations must be plausible, not conceivable or conclusory. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007).

## III. Analysis

### A. The employees acted within the scope of their employment.

The Court previously found the four employees acted within the scope of their employment. The Court ordered the "individual defendants [ ] dismissed and the United States [ ] substituted in as a defendant," and ordered Beveridge to "file an amended complaint that is consistent with this order." (Dkt. 9 at 4.) Instead, Beveridge's new complaint still includes claims against the four employees as defendants and makes the same allegation the Court previously identified as an admission: "at all times relevant" the four employees "were acting as employees and agents" for the United States. (*Id.* at 3; Dkt. 10 at 3.) Beveridge, however, now alleges that the employees acted for "personal reasons" when they spread lies about him under the state law claims, but acted pursuant to their employment when they spread lies about him under the federal law claims.

The Court affirms its previous order. "The party seeking review bears the burden of presenting evidence and disproving the Attorney General's certification by a preponderance of the evidence." *Billings v. United States*, 57 F.3d 797, 800 (9th Cir. 1995). Here, the Attorney General certified that the employees were acting within the scope of employment. (Dkt. 15-1.) Beveridge not only failed to present any evidence rebutting this claim, but his allegations *support* the certification: Kubera reported Beveridge's work behavior to human resources; Crouch emailed Kubera (Beveridge's supervisor) to complain that Beveridge had made "the work environment . . . hostile"; Speer emailed Kubera that he was "uncomfortable going out to a ship" with Beveridge; and Price emailed Kubera that he used "a different

men's room" at work because of Beveridge. (Dkt. 10 at 7–8.) Beveridge's colleagues identified workplace problems that interfered with their jobs—this is garden variety conduct that falls within the scope of employment. *Billings*, 57 F.3d at 800 ("The key issue under California law is whether the act was committed in the course of carrying out the employer's business."). The Court affirms its order dismissing the four employees and substituting the United States as defendant.

**B.     The Court lacks subject matter jurisdiction.**

The Civil Service Reform Act (CSRA) provides the exclusive remedy for federal employees to resolve workplace disputes that fall under the statute's broad provision against "prohibited personnel practices." *Orsay v. U.S. Dep't of Justice*, 289 F.3d 1125, 1128 (9th Cir. 2002) *abrogated on other grounds by Millbrook v. United States*, 133 S. Ct. 1441 (2013). In plain prose, the law bans bosses from treating employees unfairly. Here, the Court only needs to zero in on one portion of the CSRA: the Act provides protection when an employee, typically a supervisor, takes any action that significantly changes the "working conditions" for another employee who reports waste, abuse, or files grievances. (5 U.S.C. § 2302 (b)(8)(9)).[1]

Beveridge said his "employment environment drastically changed" under the supervision of his boss, Rebecca Kubera, who made false accusations against him in "retaliation for his efforts to report actions of waste fraud and abuse" and "by filing specific grievances." (Dkt. 10 at 4–5.) He alleges Kubera, and three employees who emailed her, "embarked on a conspiracy" to destroy his reputation.[2] These accusations forced Beveridge "to retire from federal service." (*Id.* at 10, 16.) The underlying conduct Beveridge complains

---

[1] The Act prohibits any employee capable of making or recommending a personnel action from a long list of improper conduct. Personnel actions are things like promotions or reassignments, and generally any "significant change in duties, responsibilities or working conditions." 5 U.S.C. § 2302.

[2] Beveridge said the other three employees acted "under cover of the authority of their positions" and didn't suggest the CSRA didn't apply to them. Even if he had, other courts have found the Act applies to co-workers: *Sculimbrene v. Reno*, 158 F. Supp. 2d 1, 6 (D.D.C. 2001) ("The Supreme Court has already rejected this type of exclusion-based argument as 'implausible'"); *Garvis v. Carter*, 2006 WL 2228825, at *7 (E.D. Wash. Aug. 3, 2006) (CSRA preempted even though "couched in terms of an alleged 'conspiracy' among co-worker Defendants"); *see also Mahtesian v. Lee*, 406 F.3d 1131, 1135 (9th Cir. 2005).

about—false accusations in retaliation for filing complaints that forced him to retire—"falls within the scope of the CSRA's 'prohibited personnel practices,'" therefore, "the CSRA's administrative procedures are [the] only remedy." *Orsay*, 289 F.3d 1128; *Mangano v. United States*, 529 F.3d 1243, 1246 (9th Cir. 2008).

Several courts have considered similar facts and reached the same conclusion.[3] For example, in *Orsay v. U.S. Dept. of Justice*, the court found that the CSRA barred federal employees' claims that colleagues "retaliated against them for their formal complaints by opening a disciplinary file on them" that "included incomplete, inaccurate, irrelevant, and untimely records." 289 F.3d at 1127. The employees said these false allegations resulted in their "constructive suspension and/or discharge." *Id.* Beveridge's claims turn on the same conduct: employees retaliated against him by spreading lies that resulted in disciplinary letters, and, constructive discharge through forced retirement. "Accordingly, where Congress has provided a process for processing prohibited personnel practices, other potential employee remedies are preempted." *Mangano*, 529 F.3d at 1246. The Court dismisses all of Beveridge's claims, since they turn on the same underlying workplace conduct that Congress crafted the CSRA to address.

**C.     The Court dismisses the action without leave to amend.**

Since the CSRA provides the exclusive remedy for Beveridge's federal employment dispute, and Beveridge already had an opportunity to amend, the Court dismisses the action without leave to amend. *Orsay*, 289 F.3d at 1136 ("Having properly dismissed . . . for want of subject matter jurisdiction," the "denial of Appellants' motion to amend their complaint a second time was not an abuse of discretion.") Any further amendment would be futile, if

---

[3] Other courts have dismissed claims for lack of jurisdiction in similar situations: *see Saul v. United States*, 928 F.2d 829, 834 (9th Cir. 1991) (CSRA preempted federal employee's defamation claims because if the allegations "were false or defamatory, they would violate merit principles and would be prohibited personnel practices."); *Mangano v. United States*, 529 F.3d 1243, 1245 (9th Cir. 2008) (CSRA barred federal employee's FTCA claims that "arose out of a variety of employment-related incidents" after another doctor retaliated against Mangano by making false accusations after Mangano filed complaints); *Lehman v. Morrissey*, 779 F.2d 526 (9th Cir. 1985) ("common law claims are preempted" by the CSRA).

not frivolous, "because the alleged facts, even if true, provided no basis for subject matter jurisdiction." *Pink v. Modoc Indian Health Project, Inc.*, 157 F.3d 1185, 1189 (9th Cir. 1998).

The Court need not reach the merits of the claims, although it observes that the United States pointed out several other problems with Beveridge's claims that would require dismissal. The Court dismisses all of Beveridge's causes of action without leave to amend.

**IT IS SO ORDERED**.

DATED: December 22, 2016

*Larry A. Burns*

**HONORABLE LARRY ALAN BURNS**
United States District Judge